UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN SCHMARR, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:18-cv-02570-JMS-TAB ) |
| WORLD CLASS GUN SHOWS INCORPORATED, DR. ATOMIC'S DEPOT, and PHIL BISENIUS, *individually and d/b/a Dr. Atomic's Depot*, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Plaintiff John Schmarr attended the Indy 1500 Gun & Knife Show (the "Gun Show") on March 16, 2016, an event held at the Indiana State Fairgrounds in Indianapolis and operated by Defendant World Class Gun Shows Incorporated ("World Class"). While there, he purchased flares and other fireworks from Defendant Dr. Atomic's Depot ("Dr. Atomic's"), a vendor that had rented a booth from World Class to sell its products at the Gun Show. When Mr. Schmarr set off one of the flares nearly four months later during a Fourth of July celebration, the flare exploded in his hand. Mr. Schmarr lost his thumb, middle finger, and ring finger knuckle on his right hand, and his left hand was injured as well. Mr. Schmarr initiated this litigation against World Class, Dr. Atomic's, and Phil Bisenius, the sole proprietor of Dr. Atomic's, alleging negligence claims against each. World Class has filed a Motion to Dismiss, [Filing No. 26], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with

1

"fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

The following are the factual allegations in the Third Amended Complaint – the operative complaint in this case[1] – which the Court must accept as true at this time:

World Class solicited, advertised to, and otherwise invited patrons to attend the Gun Show, which World Class conducted, operated, and managed. [Filing No. 19 at 5.] World Class also solicited the patronage of the general public for the sale of items and benefitted from that patronage. [Filing No. 19 at 5.] As part of its operations, World Class accepted payments from

---

[1] Mr. Schmarr initiated this litigation in state court, and World Class removed the action to this Court on the basis of diversity jurisdiction. [Filing No. 1; Filing No. 11.] Mr. Schmarr filed the operative Third Amended Complaint on October 4, 2018.

vendors to sell their products to patrons at the Gun Show. [Filing No. 19 at 6.] World Class required vendors to submit payment and a form, and provided vendors with the Indy 1500 Gun & Knife Show Exhibitor Rules and Regulations (the "Rules and Regulations"). [Filing No. 19 at 6; Filing No. 19-1.] The Rules and Regulations provide, in part, that "[n]o explosives, bombs, incendiary devices, or related items will be allowed," and that "[a]ny violation of these rules will result in immediate and permanent expulsion from this show and all future shows under our control." [Filing No. 19-1.] The Rules and Regulations were put in place for the safety of purchasers at the Gun Show. [Filing No. 19 at 6.]

Dr. Atomic's rented booth space in the course of its business as a dealer and vendor of explosives and fireworks from World Class for the Gun Show. [Filing No. 19 at 1.] Prior to the Gun Show, Mr. Bisenius submitted a form entitled "INDY 1500" which lists the "Name of Company" as "Sgt. Savages Book Bunker," and stated that Mr. Bisenius intended to exhibit "pyrotechnic supplies," among other things. [Filing No. 26-1.][2]

On March 16, 2016, during the Gun Show, Mr. Schmarr purchased flares and other fireworks from Dr. Atomic's at the Dr. Atomic's booth. [Filing No. 19 at 2.] Dr. Atomic's

---

[2] The INDY 1500 Form is not attached to the Third Amended Complaint, but Mr. Schmarr refers to Mr. Bisenius' and Dr. Atomic's "form submissions," which he alleges indicate that they "intended to sell 'pyro supplies and flares.'" [Filing No. 19 at 6.] While the INDY 1500 Form submitted by World Class in connection with its Motion to Dismiss references "Sgt. Savages Book Bunker" as Mr. Bisenius' company, and does not reference Dr. Atomic's, Mr. Schmarr does not dispute in his response to the Motion to Dismiss that this is the form he refers to in his Third Amended Complaint. The Court may consider the INDY 1500 Form, even though it is not attached to the Third Amended Complaint, because Mr. Schmarr refers to the form in his allegations. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (Court may consider "documents that are attached to the complaint, [and] documents that are central to the complaint and referred to in it"). In any event, as discussed below, the INDY 1500 form is not dispositive of Mr. Schmarr's claim against World Class.

3

warranted the items as being safe and usable and did so in order to induce Mr. Schmarr to purchase the flares and other fireworks. [Filing No. 19 at 2.]

On July 3, 2016, Mr. Schmarr began to celebrate the July Fourth holiday by lighting one of the flares he had purchased from Dr. Atomic's. [Filing No. 19 at 2.] Upon lighting the flare, it immediately exploded in Mr. Schmarr's right hand causing his right thumb, right middle finger, and right ring finger knuckle to be blown off his hand. [Filing No. 19 at 2.] Mr. Schmarr also suffered severe and permanent damage to his left hand. [Filing No. 19 at 2.]

Mr. Schmarr asserts negligence claims against Dr. Atomic's, Mr. Bisenius, and World Class. [Filing No. 19.] World Class has moved to dismiss Mr. Schmarr's negligence claim against it, and that motion is discussed below. [Filing No. 26.]

### III.
### DISCUSSION

World Class sets forth several arguments in support of its Motion to Dismiss, which the Court re-states as follows: (1) that Mr. Schmarr's allegations are conclusory and contradictory; (2) that any claim brought under the Indiana Product Liability Act (the "IPLA") against World Class fails because World Class did not sell, lease, or otherwise place into the stream of commerce the defective flare; (3) that Mr. Schmarr's negligence claim is based on World Class's failure to prohibit the presence of flares at the Gun Show, and such a claim is barred by the two-year statute of limitations for a negligence claim; and (4) that World Class did not owe a duty to Mr. Schmarr. Ultimately, Mr. Schmarr's negligence claim rises or falls based on whether World Class owed a duty to him. Accordingly, the Court discusses World Class's last argument first.

**A. Duty**

World Class argues that Mr. Schmarr has not alleged that World Class assumed any duty relating to Mr. Bisenius' products. [Filing No. 27 at 9-10.] World Class notes that Mr. Schmarr

4

alleges in connection with his claim against World Class that Mr. Bisenius owed a duty of reasonable care to him, and that Mr. Bisenius warranted the flares as being safe and usable and did so in order to induce Mr. Schmarr to purchase the flares. [Filing No. 27 at 10.] World Class also argues that the INDY 1500 Form indicates that it took no responsibility for Mr. Bisenius's products. [Filing No. 27 at 10.]

In response, Mr. Schmarr argues that he "has pled two separate breaches of duty between [World Class] and Mr. Bisenius," and that "[t]here is nothing preventing [him] from alleging that both breaches concurrently caused the damages to [him]." [Filing No. 33 at 7.] Mr. Schmarr also asserts that the INDY 1500 Form is a private agreement between World Class and Mr. Bisenius, and "is not a waiver of [Mr. Schmarr's] rights or an acknowledgement by him that [World Class] was not responsible for the goods sold by Mr. Bisenius." [Filing No. 33 at 7.]

In its reply, World Class reiterates its arguments and contends that it is Mr. Schmarr's burden to show that World Class owed a duty to Mr. Schmarr regarding the safety of the flares. [Filing No. 38 at 6-7.]

The Court notes at the outset that the parties' briefing on the duty issue is lacking. Specifically, neither side provides any meaningful discussion of whether World Class owed a duty to Mr. Schmarr in the first instance under the circumstances presented here. As discussed below, the Court finds that, based on Mr. Schmarr's allegations, it did not.

Sitting in diversity, as this Court does, the Court's duty "is to decide issues of Indiana state law" by predicting how "the Indiana Supreme Court would decide them today." *Doermer v. Callen*, 847 F.3d 522, 527 (7th Cir. 2017). Accordingly, the Court must "ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Golden v. State Farm Mut. Auto. Ins. Co.*,

5

745 F.3d 252, 255 (7th Cir. 2014) (citations omitted). The "essential elements" for a negligence action under Indiana law are: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash Coll.*, 3 N.E.3d 509, 515 (Ind. 2014) (citations omitted). Duty is a legal question for the Court. *Polet v. ESG Sec., Inc.*, 66 N.E.3d 972, 978 (Ind. Ct. App. 2016) (citation and quotation omitted); *see also Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 394 (Ind. 2016) (In a negligence action, "[w]hether a duty exists is a question of law for the court to decide"); *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind. 1992) ("Whether a defendant owes a duty of care to a plaintiff is a question of law….").

Where the issue of whether there is a duty in a particular circumstance has not already been decided, "a three-part balancing test developed by [the Indiana Supreme Court] 'can be a useful tool.'" *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011) (quoting *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010)). This test balances: "(1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns." *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

Mr. Schmarr alleges that World Class had a "duty of reasonable care…to ensure that explosives and fireworks at the [Gun Show] were not sold, that items sold at the [Gun Show] were safe for use and/or not defective, to ensure that its vendors would not induce patrons to purchase unsafe products, and to place and enforce reasonable restrictions on the goods and items sold at the [Gun Show]." [Filing No. 19 at 7.] Neither side has directed the Court to any cases involving similar, or even analogous, facts to this case, and the Court has not located any cases applying Indiana law and discussing the duties the operator of a trade show might owe to a customer who purchases an allegedly defective or unsafe product from a third party at the show. Accordingly,

this Court's job is to predict how the Indiana Supreme Court would view this issue. In order to do so, the Court considers the three factors set forth by the Indiana Supreme Court in *Webb*, but is mindful that "notwithstanding the helpfulness" of the *Webb* factors, "in many situations, a precise formulation of the basis for finding duty has proven quite elusive." *Pfenning*, 947 N.E.2d at 398. Ultimately, "[n]o better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Id.* (quoting *Gariup Constr. Co. v. Foster*, 519 N.E.2d 1224, 1227 (Ind. 1988)).

### 1. The Parties' Relationship

First, the Court considers the relationship between World Class, Dr. Atomic's and Mr. Schmarr and finds that relationship most analogous to a landlord and an invitee of one of its tenants.[3] While landowners generally "have a duty to take reasonable precautions to prevent foreseeable [harmful] acts against invitees," *L.W. v. Western Golf Ass'n*, 712 N.E.2d 983, 985 (Ind. 1999), "when the landowner is a lessor and the lessee is in operational control of the premises, such duty rarely exists," *Schneider v. Paragon Realty, LLC*, 55 N.E.3d 374, 378 (Ind. Ct. App. 2016). Here, according to Mr. Schmarr's allegations, Dr. Atomic's rented booth space from World Class and sold the flares from the rented booth. These allegations indicate that World Class did not have control over the booth – Dr. Atomic's did. *See Hammond v. Toy Industry Ass'n, Inc.*, 8 F.Supp.3d 484, 494 (S.D. N.Y. 2014) (considering negligence claim against organizer of trade show for injuries to employee of company who participated in trade show, and finding that, under

---

[3] This analogy is not perfect, as landlord/invitee of tenant cases generally involve injuries from unsafe conditions on the premises, such as an icy sidewalk. Even closer to the situation here is the potential liability of a mall owner for the safety of products sold by its tenants. However, there is a dearth of case law involving that scenario as well, likely because the idea of imposing liability under those circumstances lacks facial or legal merit. Given available case law, the Court finds the landlord/invitee of tenant cases most instructive.

7

New York law, trade show organizer did not own, maintain, or control the space at the trade show such that the nondelegable duty of the premises owner could be transferred to the trade show organizer). The first factor weighs in favor of finding the absence of a duty owed by World Class to Mr. Schmarr.

   *2. Reasonable Foreseeability*

Second, the Court again turns to the landlord/invitee of tenant analogy when considering whether World Class could have reasonably foreseen the harm to Mr. Schmarr. "[F]or purposes of determining whether an act is foreseeable in the context of duty we assess 'whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it.'" *Goodwin*, 62 N.E.3d at 391 (quoting *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 367 (Tenn. 2008)). In the landlord/invitee of tenant context, the element of control also factors into the foreseeability analysis. *See Schneider v. Paragon Realty, LLC*, 55 N.E.3d 374, 379 (Ind. Ct. App. 2016) ("In premises liability cases, whether a duty is owed depends primarily upon whether the defendant was in control of the premises when the accident occurred…. The rationale is to subject to liability the person who could have known of any dangers on the land and therefore could have acted to prevent any foreseeable harm"). While World Class arguably had notice that Mr. Bisenius would be selling pyrotechnics at the Gun Show from the information noted on the Indy 1500 Form, none of Mr. Schmarr's allegations indicate that it had notice of the allegedly defective or unsafe nature of the flares, or a level of control over the Dr. Atomic's booth such that it should have known of the danger. Perhaps for this reason, World Class specifically disclaimed any responsibility for "goods brought into the building." [Filing No. 26-1.] Given World Class's lack of control over Mr. Bisenius and Dr. Atomic's, it is difficult to see how World Class could have foreseen that Dr. Atomic's would sell allegedly unsafe flares to Mr. Schmarr.

8

### 3. Public Policy Concerns

Finally, the Court considers the public policy concerns with finding the existence of a duty versus the absence of one. Trade shows and expos serve an important economic purpose. They bring together numerous vendors in one spot for customers. Additionally, they stimulate the economy for the cities that host them. And customers who purchase unsafe or defective products at trade shows have recourse: they can pursue IPLA remedies against the manufacturers and sellers of those products. The Court finds that public policy concerns weigh against imposing a duty on the operator of a trade show to ensure that goods sold by vendors are safe.

Weighing the *Webb* factors, the Court concludes that the Indiana Supreme Court would not impose a duty upon World Class to ensure that explosives and fireworks were not sold at the Gun Show, to ensure that products sold by Dr. Atomic's at the Gun Show were safe, to ensure that vendors would not induce customers to purchase unsafe products, or to place and enforce reasonable restrictions on the goods and items sold at the Gun Show.

**B. Assumption of Duty**

Additionally, to the extent that Mr. Schmarr bases his negligence claim against Word Class on a duty owed by Mr. Bisenius and Dr. Atomic's but assumed by World Class, such a claim would also fail as a matter of law. A duty of care can arise "where one party assumes such a duty, either gratuitously or voluntarily," and "[t]he assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Yost*, 3 N.E.3d at 517 (quotation and citation omitted). Assuming a duty "requires affirmative, deliberate conduct such that it is 'apparent that the actor…specifically [undertook] to perform the task that [it] is charged with having performed negligently….'" *Id.* (quoting *Lather v. Berg*, 519 N.E.2d 755, 766 (Ind. Ct. App. 1988)). The Court rejects the notion

that the Rules and Regulations indicate that World Class assumed a duty merely because they provided that "[n]o explosives, bombs, incendiary devices, or related items will be allowed." [Filing No. 19-2.] Additionally, the Indy 1500 Form if anything indicates that World Class did not assume any duty related to the products sold by Mr. Bisenius or Dr. Atomic's. [*See* Filing No. 26-1 (Indy 1500 Form stating that World Class "assumes no responsibility of (sic) goods brought into the building").] Mr. Schmarr has not set forth any further allegations indicating that World Class assumed any duties owed by Mr. Bisenius or World Class.

World Class did not owe a duty to Mr. Schmarr, nor did it assume such a duty, to ensure that explosives and fireworks were not sold at the Gun Show, to ensure that products sold by Dr. Atomic's at the Gun Show were safe, to ensure that vendors would not induce customers to purchase unsafe products, or to place and enforce reasonable restrictions on the goods and items sold at the Gun Show. Accordingly, Mr. Schmarr's negligence claim against World Class fails as a matter of law and World Class's Motion to Dismiss, [Filing No. 26], is **GRANTED**.[4]

## IV.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS** World Class's Motion to Dismiss, [26], and dismisses Mr. Schmarr's claim against World Class **WITH PREJUDICE**.[5] No partial final judgment shall issue.

---

[4] The Court need not consider World Class's other arguments in favor of dismissal, including that the Third Amended Complaint contains insufficient and conclusory statements and boilerplate language, that World Class cannot be liable under IPLA, and that Mr. Schmarr's claim is barred by the statute of limitations.

[5] The Court is dismissing Mr. Schmarr's claim against World Class with prejudice. Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion. A

Mr. Schmarr's claims against Dr. Atomic's and its sole proprietor, Mr. Bisenius, will proceed. The Court notes that Dr. Atomic's and Mr. Bisenius, who are proceeding *pro se*, failed to appear at an October 23, 2018 initial pretrial conference. [*See* Filing No. 30 (Magistrate Judge ordering Mr. Bisenius and Dr. Atomic's to show cause within 14 days why sanctions should not issue for their failure to appear at the initial pretrial conference; to date, they have not responded to that order to show cause).] Further, neither Mr. Bisenius nor Dr. Atomic's have answered or otherwise pled to the Third Amended Complaint. The Court requests that the Magistrate Judge set a status conference to discuss the resolution of Mr. Schmarr's remaining claims.

Date: 3/5/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via United States Mail to:**

Phil Bisenius
4818 Ozark Street NE
Cedar Rapids, IA 52402

---

responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatum." Mr. Schmarr did just that, filing the Third Amended Complaint in response to an earlier Motion to Dismiss filed by World Class. [*See* Filing No. 7 (World Class's first Motion to Dismiss) and Filing No. 15 (Mr. Schmarr's Motion to Leave to File Amended Complaint, which notes that the motion was prompted by World Class's Motion to Dismiss).] The Court is not required to give Mr. Schmarr yet another chance to plead his claim against World Class because he has already had an opportunity to cure deficiencies in his pleadings. *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998). Further, given the Court's finding that World Class did not owe a duty to Mr. Schmarr, he would not be able to amend his complaint to allege viable claims against World Class even if given the opportunity to do so – particularly in light of his concession that the IPLA does not apply to any claims he may have against World Class. [*See* Filing No. 33 at 4 (Mr. Schmarr agreeing with World Class's position that his claim against World Class "does not fall under the IPLA").] Consequently, the Court, in its discretion, dismisses Mr. Schmarr's claim against World Class with prejudice.

11